AUSA McMillan/DEA SA Smalling

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

UNITED STATES OF AMERICA

V.

STEVEN WARREN TOTH
ALIREZA HENDIJANI

## CRIMINAL COMPLAINT

CASE NUMBER: 02-5062-LRJ

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about_January 29, 2002 - February 26, 2002,_____ in __Palm Beach__ county, in the

__Southern___ District of _Florida and elsewhere_____ defendant(s), (Track Statutory Language of Offense)
did knowingly and willfully combine, conspire, confederate and agree to possess with the intent to distribute 100 grams or more of a controlled substance containing a detectable amount of heroin, a Schedule I controlled substance,

in violation of Title __21__ United States Code, Section(s) _841(a)(1)_ and 846_____

I further state that I am a(n) ____Special Agent, DEA_____ and that this complaint is based on the following
facts:                          Official Title

Please see attached affidavit.

Continued on the attached and made a part hereof:     [x] Yes  [ ] No

Signature of Complainant
LYNVAL SMALLING
SPECIAL AGENT, DEA

Sworn to before me, and subscribed in my presence,
upon my finding of probable cause.

__July 10, 2000_____  at  ___West Palm Beach, Florida_____
Date                                             City and State

LINNEA R. JOHNSON
CHIEF UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer          Signature of Judicial Officer

# AFFIDAVIT

Case No. 02-5062-LRJ

I, Lynval I. Smalling, being duly sworn, depose and say:

1.      I am a Special Agent with the United States Drug Enforcement Administration ("DEA"), and have been so employed since January 4, 1998. Prior to my service with the DEA, I served as a Deputy Sheriff with the San Diego County Sheriff's Department for seven (7) years, three of which were with the Poway Sub Station, assisting the Sheriff's Narcotics Unit. I have been trained as a narcotics investigator at the FBI Academy located in Quantico, Virginia. I have received specialized training and experience in drug distribution investigations and have received training in current narcotics trafficking trends. I have completed no less than 1,000 hours of basic and advanced law enforcement instruction within the states of California and Florida as well as the DEA Academy.

2.      My experience as a narcotics investigator includes working in undercover operations, managing informants, conducting surveillance, arresting suspects, preparing and executing search warrants and seizing evidence. have also assisted the Assistant United States Attorney and District Attorney in the preparation of cases for trial and have testified in U.S. District Court and California District Court. I have participated in approximately 60 investigations concerning violations of title 21 United States Codes and California Health and Safety Codes and have participated in the arrest of over 150 suspects. I have questioned suspects, participated in debriefing of informants and conferred with other investigators and as a result have gained considerable experience.

3.      This affidavit is based upon an ongoing drug investigation, conversations with other law enforcement officers, information obtained through training and experience, enforcement activity previously conducted, a series of taped telephone recordings and the events and circumstances as set forth below. This affidavit does not purport to state all information known to investigators, or all statements made by the defendants to investigators.

4.      On January 17, 2002, a documented DEA Confidential Source, hereinafter referred to as the CS, met with Steven Warren TOTH inside TOTH'S residence located at 5029 Ivywood Road, West Palm Beach, Florida.  The meeting between the CS and TOTH was consensually recorded by DEA agents on audio tape.  During the meeting, TOTH told the CS that he (TOTH) had a source of supply for heroin and could supply the CS with heroin for $2,300.00 per ounce.

5.      On January 29, 2002 at approximately 12:10 p.m., the CS met with TOTH in the parking lot of a Home Depot store located on Okeechobee Blvd. in West Palm Beach, Florida.  The meeting between the CS and TOTH was consensually recorded by DEA agents on audio tape.  During the meeting, TOTH told the CS that his (TOTH'S) source of supply for heroin was going to deliver two (2) ounces of heroin to TOTH later that day.  TOTH instructed the CS to contact TOTH later that same day to arrange for TOTH to deliver the heroin to the CS.  TOTH told the CS that he (TOTH) would give the heroin to the CS on a credit basis and TOTH expected the CS to pay for the heroin later the same day or the next day.

6.      At approximately 1:35 p.m., on January 29, 2002, the CS placed a consensually recorded telephone call to TOTH at (561) 602-2881.  During the

conversation, TOTH told the CS that his (TOTH) source of supply was in route to meet with TOTH and the CS.

7.     At approximately 3:20 p.m. on January 29, 2002, the CS traveled to TOTH'S residence located at 5029 Ivywood Road, West Palm Beach, Florida. Prior to traveling to TOTH'S residence, the CS' person and his/her vehicle was searched by DEA agents for any contraband with negative results. At the residence, the CS met with TOTH and a white male later identified as Alireza HENDIJANI. During the meeting inside of TOTH'S residence, TOTH supplied the CS with approximately two (2) ounces of heroin. TOTH also told the CS that he (TOTH) had given HENDIJANI the title to TOTH'S truck as collateral for the two (2) ounces of heroin.

8.     S/A Val Smalling took possession of the heroin from the CS and conducted a presumptive test which tested positive for the presence of opiates. This meeting between the CS and TOTH was consensually recorded by DEA agents on audio tape.

9.     On January 30, 2002, the CS was provided with $5,100.00 in official authorized Funds. DEA agents then followed the CS to the parking lot of the Sport's Authority Sporting good store located at 2601 Okeechobee Blvd. in West Palm Beach, Florida. In the store parking lot, agents observed the CS meet with TOTH and give TOTH the $5,100 official authorized funds as payment for the two (2) ounces of heroin TOTH supplied on January 29, 2002. During the meeting, TOTH told the CS that he (TOTH) could provide the CS with additional quantities of heroin for a better price. This meeting between the CS and TOTH was consensually recorded by DEA agents on audio tape.

10.     Immediately following the meeting between the CS and TOTH on January 30,

2002, DEA agents  followed TOTH from the parking lot of Sport's Authority to the parking lot of Burt's Hot Baked Grinders (sandwich shop) located at  2448 Okeechobee Blvd. in West Palm Beach, Florida.   There, DEA agents observed TOTH meet with Alireza HENDIJANI in the parking lot.   HENDIJANI exited the passenger side of a Mercedes Benz Sports Utility Vehicle (SUV) that is registered to Antonio ESCAMILLA. Surveillance agents saw TOTH lift up his (TOTH'S) shirt and reach into the waistband area of his (TOTH'S) pants.   TOTH removed an item that Agents believed to be U.S. currency and then TOTH handed the money to HENDIJANI.

11.     Following the meeting, the CS placed a consensually recorded telephone call to TOTH.   During the conversation, TOTH told the CS that the source of supply would decrease the price of the tires (heroin) to $2,000, providing that the CS purchased at least four.

12.     Following the meeting between TOTH and HENDIJANI, surveillance agents observed HENDIJANI reenter the passenger door of the SUV and drive out of the parking lot.   Surveillance agents followed the SUV from the parking lot of Burt's Hot Baked Grinders to a residence located at 12744 Citrus Grove Blvd. in Loxahatchee, FL. HENDIJANI and the driver of the SUV went inside the residence for a few minutes and then reentered the SUV and left the residence located at 12744 Citrus Grove Blvd, Loxahatchee, FL.  Surveillance agents then followed the SUV to an apartment complex later determined to be 3788 Dale Road in Palm Springs, Florida.

12.     On February 26, 2002, the CS conducted several consensually recorded telephone conversations with TOTH.  During the conversations, the CS agreed to meet with TOTH to purchase approximately eight (8) ounces of heroin for $2,100 per ounce.

-4-

At approximately 11:53 a.m., the CS met with TOTH at TOTH'S residence located at 5029 Ivywood Road in West Palm Beach, Florida, which your affiant knows to be within Palm Beach County and the Southern District of Florida, for the purpose of purchasing the eight (8) ounces of heroin. During the meeting, TOTH told the CS that he (TOTH) was going to provide the CS with twelve (12) ounces of heroin instead of the original eight (8) ounces. TOTH further told the CS that he (TOTH) would have to go meet with his (TOTH'S) source of supply to obtain the heroin and return to meet with the CS at TOTH'S residence. TOTH was then observed departing his residence and proceeding to the area in which HENDIJANI had been previously observed by DEA agents.

13.     A short time later on February 26, 2002, (approximately 20 minutes), TOTH was observed returning to his residence. The CS met with TOTH inside of TOTH'S residence at which time TOTH supplied the CS with approximately twelve (12) ounces of heroin.   Immediately after providing the CS with the heroin, TOTH was arrested outside of his residence. S/A Val Smalling took possession of the heroin from the CS and conducted a presumptive test on the heroin which tested positive for the presence of opiates.

14.     Within five (5) minutes of TOTH'S arrest, surveillance agents observed HENDIJANI drive past TOTH'S residence and appear to observe law enforcement at TOTH'S residence, at which time agents observed HENDIJANI increase his vehicle's rate of speed. DEA agents followed HENDIJANI to a gas station parking lot located at the intersection of Haverhill Road and Southern Blvd. At this time, HENDIJANI was taken into custody by law enforcement officers.

15.     HENDIJANI was transported to the DEA office in West Palm Beach, FL

where DEA agents read HENDIJANI his <u>Miranda</u> warnings using the standard DEA form for that purpose. I note that I conversed with HENDIJANI myself and that HENDIJANI spoke fluent English. After acknowledging that he (HENDIJANI) understood his <u>Miranda</u> warnings, HENDIJANI waived his rights in writing and proceeded to make the following post <u>Miranda</u> statement: HENDIJANI stated that he (HENDIJANI) delivered two (2) ounces of heroin to TOTH at TOTH'S residence on January 29, 2002. HENDIJANI said he (HENDIJANI) obtained the heroin from Antonio ESCAMILLA at 3788 Dale Road, Palm Springs, Florida earlier on January 29, 2002. On January 30, 2002, HENDIJANI rode with ESCAMILLA in ESCAMILLA'S black Mercedes Benz SUV to meet with TOTH at the Grinder's hero sandwich shop on Okeechobee Blvd. in West Palm Beach where he (HENDIJANI) proceeded to give ESCAMILLA the money. HENDIJANI further said that he did not count the money but believed the amount to be approximately $4,000.00. HENDIJANI advised that he (HENDIJANI) and ESCAMILLA drove together in a Black Mercedes sports utility vehicle to an apartment located on Dale Road in Palm Springs, Florida. HENDIJANI said that once inside of the apartment, ESCAMILLA gave HENDIJANI $2,000.00 U.S. currency out of the money that TOTH had given to HENDIJANI. HENDIJANI stated that he was not involved in the delivery of any heroin to the CS on February 26, 2002.

16.   On February 26, 2002, following his arrest, TOTH was advised of his <u>Miranda</u> warnings using the standard DEA form for that purpose. TOTH indicated he understood his rights and executed a written waiver of the same. TOTH admitted he brokered the first transaction related above for two ounces of heroin on January 29, 2002. TOTH further admitted that HENDIJANI delivered the two ounces of heroin to TOTH at

TOTH's residence on January 29, 2002.   TOTH further stated that he met with the CS on the following day, February 30, 2002, and received $5,100 from the CS on that occasion.

WHEREFORE, on the basis of the above facts, you affiant believes that probable cause exists to charge defendants TOTH and HENDIJANI with conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

FURTHER YOUR AFFIANT SAITH NAUGHT.


LYNVAL I. SMALLING
SPECIAL AGENT
U.S. DRUG ENFORCEMENT ADMINISTRATION


SUBSCRIBED TO AND SWORN BEFORE
ME THIS 27TH DAY OF FEBRUARY, 2002,
AT WEST PALM BEACH, FLORIDA.


LINNEA R. JOHNSON
CHIEF UNITED STATES MAGISTRATE JUDGE

ALIREZA HENDIJANI

DEFENDANT

Pretrial Detention is recommended as to defendant.

JOHN C. McMILLAN, JR.
ASSISTANT UNITED STATES ATTORNEY

STEVEN WARREN TOTH

_____

DEFENDANT

Pretrial Detention is recommended as to defendant.

_____
JOHN C. McMILLAN, JR.
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.  02-5062-LRJ**

**UNITED STATES OF AMERICA**

                **Plaintiff,**

**vs.**

**STEVEN WARREN TOTH, and**
**ALIREZA HENDIJANI,**

                **Defendants.**
_____/

**CRIMINAL COVER SHEET**

1.      Did this case originate from a matter pending in the United States Attorney's Office
         prior to April 1, 1999?   ____ Yes   _X_ No

2.      Did this case originate from a matter pending in the Central Region of the United
         States Attorney's Office prior to April 1, 1999?   ____Yes   _X_ No

                                  Respectfully submitted,

                                  GUY A. LEWIS
                                  UNITED STATES ATTORNEY

                        BY: _____
                                  JOHN C. McMILLAN, JR.
                                  ASSISTANT UNITED STATES ATTORNEY
                                  Admin. No.  A5500228
                                  500 Australian Avenue, Suite 400
                                  West Palm Beach, FL 33401
                                  TEL (561) 820-8711
                                  FAX (561) 820-8777